UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| ULTRA MANUFACTURING LIMITED, and ULTRA MANUFACTURING SA DE C.V., | Case No. 21-12223 |
| Plaintiffs/Counter Defendants, | Honorable Laurie J. Michelson |
| v. | |
| WILLIAMSTON PRODUCTS, INC., WPI DE MEXICO LLC, MICHAEL C. AZAR, and JACK FEDORCHAK, | |
| Defendants/Counter Claimants, | |
| v. | |
| FLAGSTAR BANK, | |
| Intervenor Defendant/Counter Claimant. | |

## OPINION AND ORDER DENYING
## AZAR AND FEDORCHAK'S MOTION TO DISMISS [30]

Michael C. Azar and Jack Fedorchak ask to be dismissed from this larger dispute between various corporations and a bank. They explain that they are officers of the defendant corporations, Williamston Products, Inc. and WPI de Mexico, LLC (collectively "WPI"), and that there are only two claims against each of them—for common law and statutory conversion. They believe this Court lacks subject-matter jurisdiction over the conversion claims and that Ultra Manufacturing Limited and

Ultra Manufacturing SA de C.V. (collectively referred to as "Mitchell") have failed to state a claim against them.

Because the Court disagrees with the officers on both counts, their motion to dismiss is denied.

## I. Background

Before their business relationship crumbled, WPI and Mitchell were part of the supply chain of various Ford automobiles. (*See* ECF No. 1, PageID.2.) In particular, WPI was the exclusive manufacturer of certain parts. (*Id.* at PageID.6.) And Mitchell used WPI's parts to produce assemblies, or semi-complete components of the car. (*Id.* at PageID.7.) Mitchell then sold those assemblies to Ford. (*Id.*)

As part of this arrangement, Mitchell provided WPI with the tooling required to manufacture the parts Mitchell needed. (*See* ECF No. 1, PageID.6.) And the parties executed an agreement that confirmed that Mitchell maintained exclusive ownership of the tooling and could demand it back at any time. (ECF No. 1-4, PageID.54 ("The Bailee . . . acknowledges that it has no title in the Property[.] . . . The Bailee agrees that Ultra Mfg. / Mitchell Plastics or its agent shall have the right to enter the premises of the Bailee and remove the property at any time.").)

Mitchell and WPI's relationship faltered in the summer of 2021. WPI apparently suffered severe financial difficulties and defaulted on its loan obligations to Flagstar Bank. (*See* ECF No. 1, PageID.7.) So in June 2021—and with Flagstar's blessing—Mitchell and WPI entered into an accommodation agreement. (*Id.*; *see also*

ECF No. 1-6.) The agreement required WPI to continue producing parts for Mitchell through September 30, 2021, in exchange for additional funds. (ECF No. 1, PageID.7.)

Unfortunately, the accommodation agreement ultimately failed, too. Mitchell says that, on September 17th and 18th, WPI and the officers refused to release the promised parts unless Mitchell paid a roughly $350,000 "hostage payment," which was "not permitted or required" under the accommodation agreement. (*Id.* at PageID.12–13.) Mitchell alleged that these funds would be used as severance payments for WPI's Mexican workforce and to generally meet costs as Flagstar withdrew from its relationship with WPI. (*Id.* at PageID.13.)

By September 20, Mitchell had had enough. It sent the officers a letter demanding—by 2 p.m. that day—immediate release of the finished parts and a commitment to finish the final days of production required under the accommodation agreement. (ECF No. 1, PageID.15; ECF No. 1-9.) And, if they would not agree to those terms, Mitchell said it "demand[ed] immediate release of its tooling" that day. (ECF No. 1-9, PageID.133–134.)

Apparently hearing nothing in response, Mitchell filed this lawsuit against WPI and the officers the following day. (ECF No. 1.) It also sought an emergency temporary restraining order seeking both the finished parts and the tooling. (*See* ECF Nos. 1, 2.) In time, the parties resolved the emergency motion by stipulation. (ECF No. 27.) WPI promised to release all of the parts and tooling in exchange for dismissal of the claims against the officers. (*Id.* at PageID.724.)

3

But Mitchell never got all of its tooling back. (ECF No. 30, PageID.738–739; ECF No. 38, PageID.896–898.) The parties dispute what happened. The officers say that when Mitchell came to pick up the tooling, it did not have enough space on its trucks for the final two pieces, essentially abandoning them. (ECF No. 30, PageID.738.) Mitchell says that WPI and the officers refused to release the final two pieces of tooling until Mitchell made the hostage payment. (ECF No. 38, PageID.896–898.) For now, it suffices to say that—for whatever reason—Mitchell does not have all of its tooling, so the officers cannot be dismissed based on the stipulation.

So, seeking the same ends by different means, the officers filed this motion to dismiss. (*See* ECF No. 30.) Their motion makes three arguments: (1) that the Court lacks subject-matter jurisdiction because Mitchell's injury (i.e., the loss of its tooling) was self-inflicted and so is not "fairly traceable" to the officers as is required for Article III standing; (2) that the Court lacks subject-matter jurisdiction because the tooling was seized by the workers when WPI's Mexican plant closed down, making this dispute moot; and (3) that Mitchell failed to state a claim for statutory or common law conversion against them. (ECF No. 30, PageID.741–746.)

The parties have provided substantial briefing that enables resolution of the motion without the need for further argument. *See* E.D. Mich. LR 7.1(f). For the reasons that follow, the motion to dismiss the officers is denied. (ECF No. 30.)

4

## II. Subject-Matter Jurisdiction

The Court begins, as it must, with the officers' attack on its subject-matter jurisdiction. *Am. Telecom Co. v. Republic of Lebanon*, 501 F.3d 534, 537 (6th Cir. 2007) ("Subject matter jurisdiction is always a threshold determination.").

### A. Rule 12(b)(1) Standard

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) "may either attack the claim of jurisdiction on its face or it can attack the factual basis of jurisdiction." *Crugher v. Prelesnik*, 761 F.3d 610, 613 (6th Cir. 2014) (citing *Golden v. Gorno Bros., Inc.*, 410 F.3d 879, 881 (6th Cir. 2005)). A facial attack tests the pleading's sufficiency, not the veracity of its allegations. *Stout v. United States*, 721 F. App'x 462, 465 (6th Cir. 2018). But a factual challenge requires the district court to "weigh the evidence and the plaintiff has the burden of proving that the court has jurisdiction over the subject matter." *Bowers v. Wynne*, 615 F.3d 455, 457 (6th Cir. 2010) (citing *Golden*, 410 F.3d at 887). In such a case, the "court has broad discretion with respect to what evidence to consider in deciding whether subject matter jurisdiction exists, including evidence outside of the pleadings, and has the power to weigh the evidence and determine the effect of that evidence on the court's authority to hear the case." *Cartwright v. Garner*, 751 F.3d 752, 759–60 (6th Cir. 2014) (citing *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994)).

Because the officers cite their own declarations, they appear to be making a factual attack. (ECF No. 30, PageID.745; *see also* ECF Nos. 30-2, 30-3.) But even

assuming a factual attack, Mitchell has met its burden of establishing that the Court has subject-matter jurisdiction.

## B. Analysis

The officers say Mitchell lacks standing to pursue its claims against them, and that its claims are now moot because the tooling has been seized by WPI's workers and is no longer in WPI's possession. The Court will take each argument in turn.

### 1. Standing

To bring a case in federal court under Article III of the Constitution, a plaintiff must have standing. *See Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). Standing requires, among other things, that the plaintiff has suffered an injury that is "fairly traceable to the challenged conduct of the defendants." *Ass'n of Am. Physicians & Surgeons v. United States Food & Drug Admin.*, 13 F.4th 531, 537 (6th Cir. 2021). More specifically, traceability requires a "causal connection between the injury and the conduct complained of." *Glennborough Homeowners Ass'n v. United States Postal Serv.*, 21 F.4th 410, 416 (6th Cir. 2021).

At the pleading stage, this burden is "relatively modest" and "harms that flow indirectly from the action in question can be said to be fairly traceable to that action for standing purposes." *See Buchholz v. Meyer Njus Tanick, PA*, 946 F.3d 855, 866 (6th Cir. 2020) (internal quotation marks omitted). Even so, a "self-inflicted injury, by definition, is not traceable to anyone but the plaintiff." *Id.* But an injury is considered self-inflicted "only when the injury is so completely due to the plaintiff's own fault as to break the causal chain.'" *Krueger v. Experian Info. Sols., Inc.*, No. 20-

6

2060, 2021 WL 4145565, at *2 (6th Cir. Sept. 13, 2021) (quoting *Buchholz*, 946 F.3d at 866).

Mitchell has satisfied its "relatively modest" burden here. *See Buchholz*, 946 F.3d at 866. As to the challenged conversion claims, the complaint says that Mitchell had a right to immediate possession of its tooling, demanded the tooling from WPI and the officers, and that WPI and the officers refused to release it. (ECF No. 1, PageID.21.) That is enough to create the necessary causal link between Mitchell's injury (the loss of the tooling) and the officers' alleged wrongful conduct (failing to return or withholding the tooling despite Mitchell's demand and, later, this Court's order).

Resisting this conclusion, the officers ask this court to dismiss the claims against them based on their version of the facts that Mitchell's injury is "entirely of its own making." (ECF No. 30, PageID.745.) And, referencing their own declarations, the officers argue that "WPI has fully complied with any obligation to release the Mitchell Tooling to Mitchell. Mitchell representatives traveled to the Mexican plant and were afforded an opportunity to retrieve all the Mitchell Tooling on two separate occasions. WPI provided support in packing and loading the Mitchell Tooling." (*Id.*)

But the officers misstep. By arguing that Mitchell failed to pick up the tooling, they are really asking the Court to reach beyond jurisdiction to the merits of Mitchell's conversion claims and to determine who is to blame for the lost tooling. And the Sixth Circuit has forbidden such an attack at this stage. Indeed, it has explained that "the district court is prohibited from making factual findings with

respect to a jurisdictional issue when such a finding would adversely affect the merits of the plaintiff's case. . . . When 'an attack on subject-matter jurisdiction also implicates an element of the cause of action, then the district court should *find that jurisdiction exists* and deal with the objection as a direct attack on the merits of the plaintiff's claim.'" *Carrier Corp. v. Outokumpu Oyj*, 673 F.3d 430, 443–44 (6th Cir. 2012) (emphasis in original) (citing *Gentek Bldg. Prod., Inc. v. Sherwin-Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007)). In this case, a finding that Mitchell lacked space on its truck would impact far more than this Court's jurisdiction. Indeed, such a finding would substantially diminish (if not eliminate) Mitchell's conversion claims. So instead of supporting the officers' argument that the Court lacks jurisdiction, this argument suggests that the Court should find jurisdiction and treat this as an attack on the merits, which it does below.

## 2. Mootness

In addition to standing, Article III of the Constitution requires that there be an "actual controversy" at every stage of litigation. *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 90 (2013). And a case becomes moot—and therefore no longer an actual controversy—"when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Id.* (quoting *Murphy v. Hunt,* 455 U.S. 478, 481 (1982) (*per curiam*)). So if events occur during the case that make it "impossible for the court to grant any effectual relief whatever to a prevailing party," the case must be dismissed as moot. *Fialka-Feldman v. Oakland Univ. Bd. of Trs.*, 639 F.3d 711, 713 (6th Cir. 2011).

The officers argue that events since the filing of this case have made the conversion claims moot. In particular, they say: "Any seizure of the assets by the Mexican employees that took place after Mitchell's visit to the plant, while unfortunate, does not change the fact that there is no longer a 'live case or controversy' with respect to the alleged claim against the Officers. As a result, Mitchell's claim for conversion is now moot[.]" (ECF No. 30, PageID.746.)

For starters, this argument fails for the same reason that the officers' standing argument fails: they are really attacking the merits of Mitchell's conversion claims. *See Carrier Corp.*, 673 F.3d at 443–44. Again, to find that these claims are moot, the Court would first have to find that Mitchell left the tooling behind (and therefore that WPI and the officers did not refuse to release it until Mitchell made the hostage payment, as Mitchell claims). Such a finding would substantially diminish or eliminate the conversion claims. So the Court cannot make this finding under Rule 12(b)(1).

And even if the Court could take the officers' version of the facts as true, that would not moot these claims. As Mitchell notes, "even 'temporary' conversion gives rise to a valid cause of action." (ECF No. 38, PageID.908); *see also Even-Heat Co. v. Wade Elec. Prods. Co.*, 58 N.W.2d 923 (Mich. 1953) ("But conversion does not necessarily imply a complete and absolute deprivation of property; there may be a deprivation which is only partial or temporary, and where the property of the plaintiff remains in or is restored to him."). Mitchell demanded the parts and tooling as early as September 20, 2021 (ECF No. 1-9, PageID.134), but never received them. Because

9

even a temporary conversion is actionable, it is not clear why the workers' seizure of the tooling at some point after Mitchell made its demand for the tooling—especially a seizure that occurred after the complaint was filed, and after the stipulation unequivocally directed the release of the tooling—would moot these claims.

In sum, the Court finds that it has subject-matter jurisdiction over the conversion claims against the officers.

### III. The Merits

Because the Court has subject-matter jurisdiction, it now considers the officers' motion to dismiss for failure to state a claim under Rule 12(b)(6).

### A. Rule 12(b)(6) Standard

In deciding a motion to dismiss under Rule 12(b)(6), the Court "construes the complaint in the light most favorable" to Mitchell and determines whether its "complaint 'contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Heinrich v. Waiting Angels Adoption Servs., Inc.*, 668 F.3d 393, 403 (6th Cir. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Detailed factual allegations are not required to survive a motion to dismiss, *HDC, LLC v. City of Ann Arbor*, 675 F.3d 608, 614 (6th Cir. 2012), but they must "raise a right to relief above the speculative level," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). What is plausible is "a context-specific task" requiring this Court "to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

### B. Analysis

"In Michigan, the tort of conversion has bases in both statutory and common law." *In re B & P Baird Holdings, Inc.*, 759 F. App'x 468, 474 (6th Cir. 2019).  Under

10

the common law, "[c]onversion is any distinct act of dominion wrongfully exerted over another's personal property in denial of or inconsistent with his rights therein." *Aroma Wines & Equip., Inc. v. Columbian Distrib. Servs., Inc.*, 871 N.W.2d 136, 141 (Mich. 2015) (quoting *Thoma v. Tracy Motor Sales, Inc.*, 104 N.W.2d 360, 362 (Mich. 1960)). Such a conversion may be committed by "refusing to surrender a chattel on demand." *Thoma*, 104 N.W.2d at 362 (quoting Restatement (First) of Torts § 223 (1934)).

But statutory conversion requires more. The Michigan statute permits a plaintiff to seek treble damages plus costs and fees only if the defendant has, among other things, put the "convert[ed] property to the[ir] . . . own use." Mich. Comp. Laws § 600.2919a(1)(a).[1] And property is converted to the defendant's "own use" if the defendant "employed the converted property for some purpose personal to the defendant's interests, even if that purpose is not the object's ordinarily intended purpose." *Aroma Wines*, 871 N.W.2d at 148; *see also In Re Romanzi*, No. 20-2278, 2022 WL 1055497, at *10 (6th Cir. Apr. 8, 2022). For example, in *Aroma Wines*, the Michigan Supreme Court found that the defendant had put the plaintiff's wine to its own use when it "moved plaintiff's wine [out of a climate-controlled storage area] for

---

[1] In its response to the motion to dismiss, Mitchell says it also stated a claim for statutory conversion under § 600.2919a(1)(b), which requires that the defendant "aid[ed] in the concealment of . . . converted property when the person . . . aiding in the concealment of . . . converted property knew that the property was stolen, embezzled, or converted." (ECF No. 38, PageID.905–906.) But Mitchell cites no provision in the complaint that purported to state a claim under that subsection, and the Court finds none. In addition, the Court finds no allegation that the tooling was ever "concealed" or any facts relating to how the officers "aided in [its] concealment." So the Court will not analyze this basis for the claim.

its own purposes—whether it be to sell the space to other customers or complete a construction project—or that it used the wine as leverage against plaintiff" in a dispute about storage fees. *Id.* at 149.

Finally, as relevant here, "Michigan law is well settled that a plaintiff may pursue an action against a corporate official in his personal capacity when the plaintiff alleges that the official's own tortious conduct harmed the plaintiff." *Dep't of Agric. v. Appletree Mktg., L.L.C.*, 779 N.W.2d 237, 239 (Mich. 2010).

With this context, it becomes clear that Mitchell states a plausible claim for common law and statutory conversion against the officers. As to common law conversion, Mitchell alleged that it had the right to immediate possession of the tooling (ECF No. 1, PageID.11, 20), that it sent a demand for the release of the tooling directly to the officers (ECF No. 1-9), that "WPI and the Officers have refused to release the Tooling unless Mitchell pays the Hostage Payment" (ECF No. 1, PageID.16), and that "WPI and the Officers have wrongfully exerted dominion over the Tooling . . . by refusing to release them to Mitchell, despite Mitchell's demand" (*id.* at PageID.21). In short, Mitchell has properly alleged that the officers converted its tooling by "refusing to surrender [it] on demand." *See Thoma*, 104 N.W.2d at 362.

As for statutory conversion, Mitchell has adequately pled the additional element by alleging that the officers put the tooling to their "own use." *See* Mich. Comp. Laws § 600.2919a(1)(a). Indeed, Mitchell pled that the officers "converted the [tooling] to their own use" and that the officers "have refused to release the Tooling . . . unless Mitchell pays the Hostage Payment." (ECF No. 1, PageID.16, 21.)

So, as in *Aroma Wines,* where the defendant put the plaintiff's wine to its "own use" by removing it from a climate-controlled storage area as leverage in a dispute about storage fees, the officers allegedly put the tooling to their own use by using it as leverage in a dispute about the hostage payment. *See Aroma Wines*, 871 N.W.2d at 141. And in doing so, the officers allegedly "converted [the tooling] for some purpose personal to the[ir own]  interests," i.e., by using the tooling to extract the hostage payment so that they could afford the severance payments for their workers and otherwise meet costs. *See id.* at 148.

And the officers' insistence that they did not "personally benefit" from the alleged conversion is irrelevant. (ECF No. 30, PageID.744.) Indeed, "Michigan law has long provided that corporate officials may be held personally liable for their individual tortious acts done in the course of business, regardless of whether they were acting for their personal benefit or the corporation's benefit." *Dep't of Agric.*, 779 N.W.2d at 246; *see also Citizens*, 444 N.W.2d at 213 ("When conversion is committed by a corporation, the agents and officers of the corporation may also be found personally liable for their active participation in the tort, even though they do not personally benefit thereby.").

The officers make a few other unconvincing arguments. First, they argue that the officers' actions were not "willful" as is required for personal liability. (ECF No. 30, PageID.743.) To support that proposition, they cite *Citizens Insurance Company of America. v. Delcamp Truck Center, Incorporated*. *See* 444 N.W.2d 210 (Mich. Ct. App. 1989).

But that case actually cuts against the officers' argument rather than in favor of it. In *Citizens*, the court first determined that Delcamp Truck Center was liable for conversion for retaining the full amount of a check when it was only entitled to a portion of it. *Id.* at 213. The Court then considered the liability of Ronald Delcamp, the president and owner of Delcamp Truck Center, who had received calls and letters from the plaintiff demanding return of the excess funds. *Id.* at 212. The Court concluded that Mr. Delcamp's "failure to return the overpayment to Citizens after Citizens requested that the money be returned is evidence that Delcamp actively participated in the conversion. He may properly be held personally liable for the amount converted." *Id.* at 213. Similarly, here, the officers' failure to release the tooling despite Mitchell's repeated demands—made directly to them—is evidence that they actively participated in the conversion. *See id.*

Along similar lines, the officers cite *Hunt v. Haden* for the proposition that "[u]nder Michigan law, treble damages under statutory conversion are akin to punitive damages, and plaintiffs must therefore show active misconduct on the part of the defendant." (*See* ECF No. 30, PageID.743 (citing 127 F. Supp. 3d 780 (E.D. Mich. 2015).) True enough, but in that case, the court had already granted summary judgment in favor of the plaintiffs' statutory conversion claim and was only considering the proper jury instruction on damages. *Hunt*, 127 F. Supp. 3d at 782, 786. It is not clear why the Court should consider the standard for treble damages at the motion-to-dismiss stage.

14

And finally, the Court will return to the argument it rejected in the subject-matter jurisdiction context. Namely, that "[a]s confirmed by the [officers'] Declarations, WPI has fully complied with any obligation to release the Mitchell Tooling to Mitchell," and so Mitchell's injury is self-inflicted. (ECF No. 30, PageID.745.) But just as the Court was forbidden from considering the merits of the claim under the 12(b)(1) standard, it is equally forbidden from considering the officers' declarations under the 12(b)(6) standard. *See Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) ("When a court is presented with a Rule 12(b)(6) motion, it may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss *so long as they are referred to in the Complaint* and are central to the claims contained therein."). And the officers themselves seem to acknowledge the inappropriateness of considering the declarations under Rule 12(b)(6). (*See* ECF No. 30, PageID.739 ("Officers do not rely on the Declarations as evidence for their Fed. R. Civ. P. 12(b)(6) arguments.").) So, again, the officers cannot make an argument at this stage that both seeks to reach the merits of the claim and relies on the declarations.

In sum, Mitchell has properly pled a common law conversion claim against the officers when it alleges that the officers refused to surrender the tooling on demand, and it has properly pled a statutory conversion claim when it alleges that they put the tooling to their "own use" as leverage in a negotiation in an effort to extract the hostage payment.

## IV. Conclusion

For the foregoing reasons, the officers' motion to dismiss is DENIED. (ECF No. 30.)

SO ORDERED.

Dated: April 14, 2022

s/Laurie J. Michelson
LAURIE J. MICHELSON
UNITED STATES DISTRICT JUDGE

16